UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
DILLON THOMAS,                                                           :
LEON THOMAS                                                              :   **THIRD AMENDED COMPLAINT**
                                                                         :
                  Plaintiffs,                                              :   15-CV-3140 (ABC)(PK)
                                                                         :
             -against-                                                      :   JURY TRIAL DEMANDED
                                                                         :
POLICE OFFICERS LATASHA DASH, DERRICK                                    :
SUMMERS, CRAIG STEVENS;  LOU PEPE; DANIEL                                :
CALLOW;  LUIS SANCHEZ; ANTHONY LAFAUCI                                   :
& ROBERT AASHEIM; TODD FECHT;                                            :
CHRISTOPHER FISCHER; PATRICK GRANEY;                                     :
ANDREW REPETTI; ROBERT SCHIERENBECK;                                     :
QUANDA STEWART-PERRE;                                                    :
                                                                         :
                  Defendants.                                              :
------------------------------------------------------------------------ X

      Plaintiffs DILLON THOMAS and LEON THOMAS, by and through their attorneys, **THE LAW OFFICES OF KENNETH F. SMITH, PLLC,** complaining of the defendants herein, respectfully shows the Court and alleges:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the plaintiffs seek relief for the defendants' violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983; by the United States Constitution, including its First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.

2.    The claims arise from an October 2012 incident in which officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, *inter alia*, False Arrest, False Imprisonment, Malicious Prosecution, Unlawful Stop and Seizure, Excessive Use of Force, and Failure to Disclose Exculpatory Evidence.

1

3. The plaintiffs seek monetary damages (special, compensatory and punitive) against defendants, as well as an award of attorney's fees and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343 and 1367(a).

5. The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

6. Venue herein is proper for the United States District Court for the Eastern District of New York under 28 U.S.C. §1391 (a), (b) and (c), in that the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## JURY DEMAND

7. Plaintiffs demand a trial by jury in this action.

## PARTIES

8. Plaintiff DILLON THOMAS is a twenty-three year old male who at all times hereinafter mentioned was and is a resident of the State of New York and the County of Kings. He is the brother of plaintiff Leon Thomas and is of African-American descent.

9. Plaintiff LEON THOMAS is a twenty-six year old male who at all times hereinafter mentioned was and is a resident of the State of New York and the County of Kings. He is the brother of plaintiff Dillon Thomas and is of African-American descent.

10. Defendants LATASHA DASH, DERRICK SUMMERS, CRAIG STEVENS, LOU PEPE, DANIEL CALLOW, LUIS SANCHEZ, ANTHONY LAFAUCI are and were at all times relevant

herein duly appointed and acting officers, servants, employees and agents of the City of New York and/or the New York City Police Department.  Defendants Dash, Summers, Stevens, Pepe, Callow, Sanchez, and LaFauci are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of the City of New York, were acting for, and on behalf of, and with the power and authority vested in them by the City of New York and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

11. Defendants ROBERT AASHEIM; TODD FECHT; CHRISTOPHER FISCHER; PATRICK GRANEY; ANDREW REPETTI; ROBERT SCHIERENBECK; (first name unknown) STEWART-PERRE and (the Emergency Services Unit "ESU" defendants), are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the City of New York and/or the New York City Police Department, specifically, in the ESU. Defendants Aasheim, Fecht, Fischer, Graney, Repetti, Schierenbeck and Stewart-Perre, are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of the City of New York, were acting for, and on behalf of, and with the power and authority vested in them by the City of New York and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

12. The defendant police officers are sued in their individual and official capacities.

## STATEMENT OF FACTS

13. On or about October 28, 2012, approximately 4:30AM, at 774 East 48th Street, Brooklyn, NY 11203, County of Kings, plaintiffs Dillon and Leon Thomas—along with their mother and

father, three sisters and brother—were inside the above location, the family home, when the family was awakened by pounding on the front door.

14. Plaintiffs' father opened the door and immediately defendant police officers, upon information and belief Emergency Services Unit (ESU) officers[1], entered the home without displaying search warrants or arrest warrants and pointed loaded firearms at the family members.

15. Defendant ESU police officers then forcibly and without explanation grabbed plaintiff Leon Thomas in a tackling maneuver and repeatedly punched him about the body before forcing handcuffs onto his wrists and dragging him outside.

16. One of the defendant police officers then slammed Leon Thomas into a vehicle parked at the location which belongs to plaintiffs' father, before stuffing him into an unmarked police car and departing the location.

17. Defendant police officers repeatedly punched plaintiff Dillon Thomas about the face and body and forced him to the ground, while other defendant officers pointed loaded firearms at his face and head.

18. As plaintiff Dillon Thomas lay on the ground one defendant officer repeatedly stomped on his collarbone, on the site of a preexisting fracture, causing further physical injury before placing him in handcuffs and into a patrol car.

19. Defendant police officers ransacked the home in a search but found no contraband or illegal materials.

20. Plaintiffs were transported to a local precinct where they subjected to interrogation by several case detectives, including, upon information and belief, defendants Stevens, Pepe, Callow and Sanchez. Defendant detectives repeatedly slapped plaintiff Dillon Thomas across the face.

---

[1] The Emergency Services Unit ("ESU") defendants were all wearing their characteristic military-style "stormtrooper" uniforms: https://www.flickr.com/photos/tsptactical/6805123013

4

21. Both plaintiffs were held in filthy and demoralizing conditions before being transported to Central Booking.

22. While at Central booking, plaintiff Dillon Thomas was assaulted by other arrestees who forcibly took his shoes and his pocket change.

23. As a result of the foregoing, plaintiff Dillon Thomas suffered an asthma attack while in custody which required hospitalization.

24. At Central Booking, plaintiff Leon Thomas was held for approximately two days before appearing before a judge in Kings Criminal Court who set bail at $50,000.

25. Plaintiff Dillon Thomas was released on his own recognizance by the court at his arraignment.

26. Plaintiffs were charged with multiple felonies involving an alleged assault, and including an alleged taking of iPhone.

27. Plaintiff Leon Thomas was transported to Rikers Island, where he was subjected to strip search and held for approximately one week, before being released on bail.

28. While at Rikers Island, plaintiff Leon Thomas' clothing and sneakers were stolen from him by other inmates.

29. The defendant Police Officers did not fulfill their Duty to investigate the case.

30. During her investigation into this case, at the pre-indictment stage, defendant Police Officer Dash, came into exculpatory identification evidence that she knew ran completely counter to the police theory of the case.

31. Defendant Dash failed to disclose said exculpatory evidence for almost one year.

32. Said exculpatory evidence was fatal to the credibility of the alleged complaining witness in the case and resulted in the charges against plaintiffs being dismissed.

33.     Plaintiffs repeatedly appeared in Kings Supreme Court for over a year before the criminal charges were resolved favorably to plaintiffs.  During the pendency of the case, plaintiff Leon Thomas was required to visit a bail bondsman every week to "check in" and could not leave the State of New York.

## **GENERAL ALLEGATIONS**

34.     Plaintiffs did not commit any assaults or any other crimes against any persons as alleged by defendant police officers;

35.     Plaintiffs did not resist arrest during their interactions with defendant police officers.

36.     Plaintiffs did not possess any contraband or other illegal materials at any time in the above-mentioned incidents.

37.     At all times during the events described, the defendant police officers were engaged in a joint venture.  The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs;

38.     During all of the events described, the defendant police officers acted maliciously and with intent to injure plaintiffs.

39.     Defendant police officers unlawfully and illegally arrested plaintiffs with no probable cause to believe that they had committed a crime.

40.     The individual defendant police officers acted under pretense and color of state law in their individual and official capacities and within the scope of their employment.  Said acts by said defendant police officers were beyond the scope of their jurisdiction, without authority or law, and

6

in abuse of their powers, and said defendant officers acted maliciously, willfully, knowingly, and with the specific intent to deprive plaintiffs of his rights.

41. The individual defendant police officers failed to meet their obligations under New York State and Federal Law to timely disclose exculpatory information in their possession, and violated plaintiffs' rights by prosecuting them despite knowing that they were in fact, innocent.

42. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

   a) Violation of plaintiffs' rights to Free Speech, pursuant to the First Amendment to the United States Constitution;
   b) Violation of plaintiffs' rights, pursuant to the Fourth Amendment of the United States Constitution, to be free from unreasonable search and seizure;
   c) Violation of plaintiffs' rights, pursuant to the Fifth, Sixth and the Fourteenth Amendments to the United States Constitution, to Due Process of Law;
   d) Violation of plaintiffs' rights, pursuant to the Eighth Amendment to the United States Constitution, to be free from cruel and unusual punishment;
   e) Loss of liberty;
   f) Loss of employment;
   g) Opportunity loss;
   h) Economic loss;
   i) Stress–related injury;
   j) Loss of personal property;

**FIRST CLAIM**
**(FALSE ARREST UNDER FEDERAL LAW)**

43. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein

44. On the above incident date, defendant police officers, including but not limited to defendants Dash and Summers, falsely arrested plaintiffs without an arrest warrant, probable

7

cause, or any reasonable suspicion that plaintiffs had committed or were in the process of committing a crime.

45. Defendant police officers, including but not limited to defendants Dash and Summers, utterly failed to investigate this alleged crime and rather, shirked their duty to do so.

46. Accordingly, defendant police officers are liable to plaintiffs for False Arrest under 42 U.S.C. § 1983; and the Fourth and Fourteenth Amendments to the United States Constitution.

47. As a direct and proximate result of the abuse of authority detailed above, plaintiffs sustained the damages stated.

## SECOND CLAIM
## (MALICIOUS PROSECUTION UNDER FEDERAL LAW)

48. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

49. Defendant police officers, including but not limited to defendants Dash, Summers, Stevens, Pepe, Callow, Sanchez and LaFauci, initiated, commenced and continued a malicious prosecution against plaintiffs.

50. Defendant police officers caused plaintiffs to be prosecuted without any probable cause, until the charges were dismissed after multiple court appearances almost one year after they were commenced.

51. By their conduct, as described herein, and acting under color of state law, defendants are liable to plaintiffs under 42 U.S.C. § 1983 for the violation of their Constitutional right to be free from Malicious Prosecution under the First and Fourteenth Amendments to the United States Constitution.

52.     As a direct and proximate result of the abuse of authority detailed above, plaintiffs sustained the damages stated.

## THIRD CLAIM
### (FAILURE TO INTERVENE UNDER FEDERAL LAW)

53.     Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

54.     On the above described incident date, some of the defendant police officers, including but not limited to defendants LaFauci, did not have direct contact with plaintiffs but had a reasonable opportunity to observe and to prevent the violations of plaintiffs' constitutional rights by their fellow offices, but failed to intervene.

55.     Accordingly, said defendant police officers are liable to plaintiffs for failing to intervene to prevent the violation of plaintiffs' Constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

56.     As a direct and proximate result of the abuse of authority detailed above, plaintiffs sustained the damages stated.

## FOURTH CLAIM
### (FABRICATION OF EVIDENCE UNDER FEDERAL LAW)

57.     Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

58.     Defendant officers, including but not limited to defendants Dash, Summers, Stevens, Pepe, Callow, and Sanchez are liable to plaintiffs because they intentionally conspired to fabricate evidence against plaintiffs, depriving plaintiffs of liberty without due process of law.

59.     Furthermore, defendant officers violated the law by making false statements by drafting and/or signing sworn complaints and false police reports, and by allowing a witness to give false Grand Jury testimony.

60. Furthermore, the defendant officers violated the law by manipulating evidence to attempt to obtain a prosecution and unjust conviction, while performing the function of investigators.

61. Defendant officers were on notice that creating fabricated evidence is a clear violation of law because it well established that individuals who knowingly use false evidence in a prosecution to obtain a conviction act unconstitutionally and that this is redressable in an action for damages under 42 U.S.C. § 1983.

62. Defendant officers are also liable to plaintiffs because they intentionally created false information likely to influence a fact finder's or jury's decision by, inter alia, forwarding false information to prosecutors, drafting and signing a sworn criminal court complaint and police reports, omitting and/or manipulating evidence, fabricating testimony and evidence, suppressing and concealing exculpatory material and evidence, and forwarding and presenting false information to a prosecutor and/or a court thereby violating plaintiffs' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

63. Accordingly, defendant police officers are liable to plaintiffs for fabrication of evidence pursuant to 42 U.S.C. § 1983; and the Fifth and Sixth Amendments to the United States Constitution.

**FIFTH CLAIM**
**(FAILURE TO DISCLOSE EXCULPATORY INFORMATION UNDER FEDERAL LAW)**

64. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

65. Defendants, including but not limited to defendant Latasha Dash, failed to disclose material exculpatory information in their possession for over a year.

66. Accordingly, defendant police officers are liable to plaintiffs for Failure to Disclose Exculpatory Information in violation of plaintiffs' Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

67. As a direct and proximate result of the abuse of authority detailed above, plaintiffs sustained the damages stated.

## SIXTH CLAIM
### (UNREASONABLE USE OF FORCE)

68. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

69. On the above incident date, the defendants from the NYPD Emergency Services Unit (The "ESU defendants") including but not limited to defendants Aasheim, Fecht, Fischer, Graney, Repetti, Schierenbeck, and Stewart-Perre) used force upon plaintiffs was objectively unreasonable.

70. The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiffs, since plaintiffs were not breaking any laws, and were unarmed, compliant, and did not resist arrest.

71. Yet the degree of force used against plaintiffs by the above-mentioned ESU officers through their use of tackling, ramming, punching, kicking, stomping, kneeing and squishing plaintiffs, was unreasonable.

72. Additionally, the use of force against plaintiffs by defendant officers (including but not limited to defendants Stevens, Pepe, Sanchez and Callow) through the use of slapping plaintiffs during their interrogations, was unreasonable.

73. In addition, defendant officers applied handcuffs over-tightly to plaintiffs by closing and locking them into a position where they constricted the hands well in excess of that level of force needed to safely restrain a human being.

11

74. Those defendants who did not touch plaintiffs but witnessed the unlawful conduct, but failed to intervene and protect plaintiffs from this conduct are also liable to plaintiffs.

75. Accordingly, defendant police officers are liable to plaintiffs for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the First, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution.

76. As a direct and proximate result of the abuse of authority detailed above, plaintiffs sustained the damages stated.

**WHEREFORE**, plaintiffs demand a jury trial and the following relief, jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Costs, interest and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and,

d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated:  Brooklyn, New York
        September 30, 2016

Respectfully submitted,

**/S/ KENNETH F. SMITH**
The Law Offices of
Kenneth F. Smith, PLLC
16 Court Street, Suite 2901
Brooklyn, NY 11241
(646) 450-9929
(646) 514-4524 (FAX)
*Counsel for Plaintiffs*